**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| **USA INTERMEDIATE, INC., *et al.*,**<br><br>***Plaintiffs*,**<br><br>**v.**<br><br>**MATTHEW SIPOS, *et al.*,**<br><br>***Defendants*.** | |
| **MATTHEW SIPOS,**<br><br>***Counter-Plaintiff*,**<br><br>**v.**<br><br>**USA INTERMEDIATE, INC., *et al.*,**<br><br>***Counter-Defendants*.** | **Case No. 1:26-cv-01239-JRR** |

**MEMORANDUM OPINON AND ORDER**

The court has before it Counter-Plaintiff Matthew E. Sipos' Motion for Preliminary Injunction (ECF No. 41; the "Motion"). The court has reviewed all submissions.[1] Notwithstanding Counter-Plaintiff's request for same, the court has determined that no hearing is necessary. Local Rule 105.6 (D. Md. 2025).

## I. INTRODUCTION

In the Motion, Defendant/Counter-Plaintiff Matthew Sipos seeks a preliminary injunction with respect to Counts III and V of his Verified Amended Counterclaim (ECF No. 42). Specifically, Count III seeks declaratory judgment against Counter-Defendants USA Intermediate,

[1] For efficiency of time given the hearing scheduled for October 6, 2026, the court dispenses with setting forth a long-form recitation of the factual background of the parties' dispute. The Verified Amended Counterclaim (ECF No. 42), Motion for Preliminary Injunction (ECF No. 41), as well as the Opposition thereto (ECF No. 50), accomplish this task well.

Inc. ("USA"), CDA, Inc. d/b/a MaxSent ("MaxSent"), and Universal Protection Service, LP d/b/a Allied Universal ("Allied"); and Count V seeks declaratory judgment against USA.

## II. LEGAL STANDARD

"A preliminary injunction is 'an extraordinary remedy' that 'may only be awarded upon a clear showing that the plaintiff is entitled to such relief.'" *Pierce v. N. Carolina State Bd. of Elections*, 97 F.4th 194, 209 (4th Cir. 2024) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008)); *see Benisek v. Lamone*, 585 U.S. 155, 158 (2018) (noting that "a preliminary injunction is 'an extraordinary remedy never awarded as of right'"). As such, preliminary injunctive relief is to be "granted only sparingly and in limited circumstances." *St. Michael's Media, Inc. v. Mayor & City Council of Baltimore*, 566 F. Supp. 3d 327, 351 (D. Md. 2021), *aff'd,* No. 21-2158, 2021 WL 6502219 (4th Cir. Nov. 3, 2021), and *aff'd,* No. 21-2206, 2021 WL 6502220 (4th Cir. Nov. 13, 2021) (quoting *Micro Strategy, Inc. v. Motorola, Inc.*, 245 F.3d 335, 339 (4th Cir. 2001)).

A party seeking preliminary injunctive relief "must establish that 1) they are likely to succeed on the merits; 2) they are likely to suffer irreparable harm absent preliminary relief; 3) the balance of the equities favors the requested injunctive relief; and 4) that relief is in the public interest." *Leaders of a Beautiful Struggle v. Baltimore Police Dep't*, 2 F.4th 330, 339 (4th Cir. 2021) (citing *In re Search Warrant Issued June 13, 2019*, 942 F.3d 159, 170–71 (4th Cir. 2019)). These factors were established by the Supreme Court in *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7 (2008). "[Counter-P]laintiff bears the burden of establishing that each of these factors supports granting the injunction."[2] *Direx Israel, Ltd. v. Breakthrough Med. Corp.*,

[2] "Because preliminary injunction proceedings are informal ones designed to prevent irreparable harm before a later trial governed by the full rigor of usual evidentiary standards, district courts may look to, and indeed in appropriate circumstances rely on, hearsay or other inadmissible evidence when deciding whether a preliminary injunction is warranted." *St. Michael's Media, Inc. v. Mayor & City Council of Baltimore*, 566 F. Supp. 3d 327, 352 (D. Md. 2021),

952 F.2d 802, 812 (4th Cir. 1991) (citing cases); *see St. Michael's Media, Inc.*, 566 F. Supp. 3d at 351 (same).

## III. **ANALYSIS**

At issue in Count III is the offer letter (ECF No. 19-1; "Offer Letter") from MaxSent to Sipos and related Employment and Non-Compete Agreement (found at ECF No. 1-2; "Employment Non-Compete") between Sipos and MaxSent. The Offer Letter of April 29, 2025, sets forth the terms of Sipos' continued employment with MaxSent as its Vice President, a critical feature of USA's stock acquisition of MaxSent. Under the Offer Letter, Sipos was to receive base compensation of $15,000 per month, as well as a $150,000 bonus conditioned on Sipos remaining in his continued employment position through at least October 31, 2025 (the "Stay Bonus"). The Offer Letter further conditioned Sipos' continued employment on his execution of the Employment Non-Compete.

The Employment Non-Compete, also executed April 29, 2025, *inter alia*, includes a 12-month non-compete as follows:

> **A. Non-Compete**. Employee covenants and agrees that, for a period of twelve (12) months following Employee's last day of employment with the Company, Employee shall not: (a) engage in any Competitive Activity (as defined below) within the Prohibited Territory (as defined below); or (b) assist anyone else in engaging in Competitive Activity within the Prohibited Territory.
>
> i. "Competitive Activity" means competing against the Company by performing the same or substantially similar work as Employee performed on behalf of the Company at any time during the last twelve (12) months of employment with the Company in a Prohibited Territory for an entity engaged in the Business (as defined below). . . .
>
> ii. "Business" means the business engaged in by the Company at any time during the last twelve (12) months of Employee's

*aff'd,* No. 21-2158, 2021 WL 6502219 (4th Cir. Nov. 3, 2021), and *aff'd,* No. 21-2206, 2021 WL 6502220 (4th Cir. Nov. 13, 2021) (quoting *G.G. ex rel. Grimm v. Gloucester Cnty. Sch. Bd.*, 822 F.3d 709, 725–26 (4th Cir. 2016)).

> employment with the Company, as limited to the line or lines of business that are the same as or substantially similar to those for which the Employee performed services on behalf of the Company.
>
> iii. "Prohibited Territory" means: (a) each city and county (or equivalent local unit of government) where Employee assisted the Company to engage in the Business at any time during the last twelve (12) months of Employee's employment with the Company; and (b) any territory assigned to Employee by the Company at any time during the last twelve (12) months of Employee's employment with the Company.

(ECF No. 1-2 at 3.)[3] The Offer Letter and Employment Non-Compete are described together in the Amended Verified Complaint as the "Employment Terms." (ECF No. 42 at ¶ 9.)

At issue in Count V is the Sale of Business Non-Competition and Non-Solicitation Agreement (ECF No. 1-3; "Sale Non-Compete") among USA (as "Purchaser"), MaxSent, and Sipos (as "Selling Party"), which has its roots in the Equity Purchase Agreement[4] through which USA acquired the stock of MaxSent. (ECF No. 50-1.)

The Equity Purchase Agreement is structured as an initial cash payment followed by a post-closing earnout. Under the Equity Purchase Agreement, Sipos' entitlement to his earned payout is, tied to, *inter alia*, MaxSent winning bids on certain contracts during Sipos' temporary continued employment, as well as Sipos' execution of the Sale Non-Compete (identified as a Seller deliverable under the Equity Purchase Agreement). *See* ECF No. 50-1 at §§ 1.5(d), 1.5(i), 1.7(i), 1.7(k).

The Sale Non-Compete includes a five-year non-compete as follows:

> 3.1 Non-Competition. Commencing upon the Closing Date and for five (5) years from the Closing Date [(]the "Non-Compete Term"),

[3] Page references are to the CM/ECF pagination.

[4] The Equity Purchase Agreement, entered April 28, 2025, identifies USA as "Purchaser" and MaxSent, Todd Pattison (individually and as Trustee of The Todd A. Pattison Living Trust), Travis J. Martz (as Trustee of the Todd A. Pattison 2021 Family Trust), and Sipos as "Sellers." (ECF No. 50-1 at 5.)

> the Selling Party will not . . . conduct, engage in, or establish or take any steps to establish, as an owner, operator, security holder, partner, investor, member, creditor, licensor, licensee or otherwise, a Competing Business within the Restricted Geographic Area; (ii) become a director, officer, consultant, partner, member, employee or otherwise hold any position in or otherwise provide services to a Competing Business within the Restricted Geographic Area. . . . ; or (iii) take any steps to establish a Competing Business. . . .

(ECF No. 1-3 at 4.)[5]

Relevant to Counts III and V for declaratory judgment as to the Employment Terms and the Sale Non-Compete, respectively, are Counts I and IV for breach of contract. In Count I for breach of contract, Sipos complains that Counter-Defendants materially breached the Employment Terms by failing to pay Sipos his Stay Bonus despite Sipos' "full and faithful performance." (ECF No. 42 ¶ 31.) Failure to pay the Stay Bonus is the sole alleged breach identified in Count I.

In Count IV for breach of contract against USA, Sipos complains that USA nefariously (and in violation of the Equity Purchase Agreement) acted to "eliminate MaxSent's [a]ctive [b]ids" identified in the Equity Purchase Agreement, thus wrongly doing Sipos out of his earnout payment. According to Sipos, USA "orchestrated a deliberate scheme to eliminate MaxSent's [a]ctive [b]ids for the primary purpose of reducing earnout payments owed to Mr. Sipos under Section 1.5 of the Equity Purchase Agreement." *Id*. at ¶ 51. As a result, "USA materially breached . . . the Equity Purchase Agreement." *Id*. at ¶ 53. This is the sole alleged breach on which Count IV is based.

In Count III, Sipos seeks declaration that the Employment Non-Compete (a component of the Employment Terms at issue in Count I for breach of contract) "is unenforceable," that Counter-Defendants "have no legal or equitable right to enforce" it, and that he is not bound by it because "failure to pay the Stay Bonus constitutes a prior material breach of the Employment Terms." (ECF No. 42 at 12.) In Count V, Sipos seeks declaration that the Sale Non-Compete (at issue in

[5] Capitalized terms are defined terms within the Sale Non-Compete.

Count IV for breach of contract as a component of the Equity Purchase Agreement) is unenforceable, that USA has "no legal or equitable right to enforce" it, and that he is not bound by it because USA breached the Equity Purchase Agreement by (wrongfully) eliminating MaxSent's active bids, which in turn purported to eliminate Sipos' entitlement to earnout payments. *Id*. at 15. Further, Sipos explains, the Sale Non-Compete, a material term of the Equity Purchase Agreement, was "supported, in material part, by USA's agreement to pay Mr. Sipos additional consideration for his equity in MaxSent through earned payments provided for in Section 1.5 of the Equity Purchase Agreement." *Id*. ¶ 57.

The Declaratory Judgment Act provides that a court "may declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C.A. § 2201(a). The court retains broad discretion in determining "whether and when to entertain an action under the Declaratory Judgment Act, even when the suit otherwise satisfies subject matter jurisdictional prerequisites." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 282 (1995)). The Fourth Circuit has recognized that "a district court may decline to entertain a declaratory judgment claim when it has 'good reason' to do so." *Volvo Constr. Equip. N. Am., Inc. v. CLM Equip. Co.*, 386 F.3d 581, 594 (4th Cir. 2004).

In determining whether to exercise declaratory jurisdiction, the court considers (i) whether declaratory relief would "serve a useful purpose in clarifying and settling the legal relations in issue," and (ii) whether the judgment would "terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Id.* (citation omitted). *See Aetna Cas. & Sur. Co. v. Quarles*, 92 F.2d 321, 325-26 (4th Cir. 1937) (describing the two-part consideration and stating that if either prong is not satisfied, the court has good reason to decline to entertain the claim); *Aetna Cas. & Sur. Co. v. Ind-Com Elec. Co*., 139 F.3d 419, 422 (4th Cir. 1998) (providing

that declaratory judgment is not appropriate "to try a controversy by piecemeal, or to try particular issues without settling the entire controversy, or to interfere with an action which has already been instituted"); *Wells v. Johnson*, 150 F.4th 289, 305 (4th Cir. 2025) (observing that a count for declaratory judgment "aimed into the past" seeks "little more than an advisory opinion").

A common reason courts find good reason to decline to hear declaratory judgment claims is where a breach of contract claim covers the matter sought to be resolved through an accompanying claim for declaratory judgment. *Metra Indus., Inc. v. Rivanna Water & Sewer Auth.*, No. 3:12CV00049, 2014 WL 652253, at *2 (W.D. Va. Feb. 19, 2014) (collecting cases). quotation marks omitted). This is precisely the circumstance here.

At bottom, Sipos' entitlement to the declaratory judgment he seeks by way of Count III hinges on, and is entirely dependent upon, determination in Sipos' favor that Counter-Defendants breached the Employment Terms as alleged in Count I. Similarly, Sipos' entitlement to the declaratory judgment he seeks by way of Count V hinges on, and is entirely dependent upon, determination in Sipos' favor that USA breached the Equity Purchase Agreement as alleged in Count IV. Indeed, there is quite literally no path to declare that Sipos is unencumbered by the Employment Non-Compete and (or) the Sale Non-Compete without arriving at those twin conclusions.

Moreover, at this stage, it does not appear to the court that Sipos' requested declaratory judgments (Counts III and V) are necessary to "afford relief from the uncertainty" the parties (including Sipos) contend gave rise to this action. Indeed, at Counts I and II of the Complaint (ECF No. 1), Plaintiffs/Counter-Defendants USA and MaxSent claim Sipos breached the Employment Non-Compete and the Sale Non-Compete, respectively. And, as set forth above, Sipos' Counterclaim Counts I and IV claim breach of the Employment Terms (of which the

Employment Non-Compete is a component) and the Equity Purchase Agreement (of which the Sale Non-Compete is a component). Therefore, declaration that Sipos is unencumbered by his Employment Non-Compete and his Sale Non-Compete, and that Counter-Defendants are legally and equitably disentitled from enforcing them, necessarily involves adjudication of alleged past conduct. *See Wells*, 150 F.4th at 305 (observing that declaratory judgment "aimed into the past" is "little more than an advisory opinion"); *see also AvePoint, Inc. v. Knickerbocker*, 475 F. Supp. 3d 483, 488 (E.D. Va. 2020) (dismissing declaratory judgment claim in employment-related action where parties' relationship had ended, alleged breach had occurred, and allegedly owed compensation had accrued).

## IV. CONCLUSION

For the reasons set forth herein, the court finds Sipos fails to demonstrate he is likely to succeed on the merits of Counts III and V of the Verified Amended Counterclaim.[6] As such, the Motion (ECF No. 41) is **DENIED**, and the hearing scheduled for October 6, 2026, is **CANCELLED**.

It is so **ORDERED**.

October 2, 2026

/S/
________________________
Julie R. Rubin
United States District Judge

[6] The court thus need not reach the balance of the four *Winter* factors. *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7 (2008).